# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONALD RAY BISHOP, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-18-79-SPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Donald Ray Bishop requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-eight years old at the time of the administrative hearing (Tr. 35). He completed ninth grade and has worked as a heavy equipment operator (Tr. 37, 49-50). The claimant alleges that he has been unable to work since an amended onset date of September 19, 2015, due to diabetes, high blood pressure, depression, neuropathy, memory loss, lack of reading comprehension, dyslexia, obesity, vision problems, and back problems (Tr. 34, 168, 178).

**Procedural History**

In September 2015, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 155-60). His application was denied. ALJ James Linehan held an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 23, 2017 (Tr. 14-27). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant had the residual functional capacity ("RFC") to perform a limited range of medium work as defined in 20 C.F.R. § 416.967(c), *i. e.,* he could lift and carry forty pounds occasionally and twenty pounds frequently; stand/walk alternatively for six hours in an eight-hour workday with intermittent sitting throughout the day; reach, push, and pull

with his upper extremities and use his hands for grasping, holding, and turning objects up to eight hours per eight-hour day; and climb, stoop, kneel, crouch, crawl, and balance up to six hours per eight-hour day (Tr. 20). Due to psychologically-based limitations, the ALJ found the claimant could perform work with a Specific Vocational Preparation ("SVP") level of two or less with limited ability to apply common sense understanding to remember and carry out very short and simple written or oral instructions (Tr. 20). The ALJ further found the claimant could make simple work-related decisions, occasionally interact with supervisors and co-workers, and have contact with the general public incidental to work purposes (Tr. 20). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *i. e.,* bakery racker, conveyor line bakery worker, and bottling line attendant (Tr. 25-27).

**Review**

The claimant contends that the ALJ erred by failing to properly evaluate the opinions of treating physician Dr. Ellis and state agency psychologists Dr. Lochner and Dr. Swisher, and failed to consider the possible reasons for his noncompliance when evaluating his subjective statements. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of diabetes, peripheral neuropathy, personality disorder, and depression, but that his hypertension and obesity were non-severe (Tr. 16-17). The relevant medical evidence reveals that the claimant presented to Dr. Ellis in December 2014, at which time he diagnosed the claimant with

depression, diabetes, hypertension, headache, obesity, and tobacco use disorder (Tr. 261-264). At a follow-up appointment in January 2015, the claimant's blood pressure was "greatly improved," his headaches were gone, and he was non-concerned about his health (Tr. 265-67). The claimant reported pain in his feet in July 2015 (Tr. 268). A foot exam revealed bilateral loss of sensation to light touch and Dr. Ellis diagnosed the claimant with peripheral neuropathy (Tr. 268-69).

On December 18, 2015, Kathleen Ward, Ph.D. performed a consultative mental status examination of the claimant (Tr. 273-76). Dr. Ward noted that the claimant's effort was lackluster and that he was not inclined to do things that were difficult; however, after conveying that his performance related to his ability to manage funds, his performance improved (Tr. 275). Dr. Ward estimated the claimant's intellectual abilities to be "fairly low" but likely above seventy, and indicated he had some deficits in social judgment and problem solving (Tr. 275-76). She assessed the claimant with intermittent explosive disorder, antisocial personality disorder, and unspecified depressive disorder, noting that his prognosis would likely improve with mental health care, but that he was fairly resistant (Tr. 276).

The claimant presented to Gerald Harper, a nurse practitioner at Dr. Ellis's clinic, in March 2016 and reported high blood pressure, dry mouth, anhedonia and depression causing him to not leave the house, anxiety and agitation around people, difficulty with reading comprehension, and short-term memory loss affecting his ability to remember his daily routines (Tr. 290-91). Mr. Harper referred the claimant to a psychologist for further

evaluation and treatment of his depression and recommended an IQ test and a reading comprehension test (Tr. 291).

On August 23, 2016, Dr. Ellis completed a physical RFC assessment as well as forms regarding unskilled work requirements, sedentary work requirements, absences from work, and a clinical assessment of pain (Tr. 310-18). In these forms, Dr. Ellis indicated, *inter alia*, that the claimant could not stand/walk up to two hours in an eight-hour workday, sit up to six hours, sustain activity at a pace and with the attention to task as would be required in the competitive workplace, or attend any employment on a sustained basis due to his weight and height (Tr. 313). He also indicated that physical work activities would increase the claimant's pain to such an extent that rest and/or medication would be necessary, that his pain would reduce basic mental work activities to such a degree that rest and/or medication would be required, and that such medication would render the claimant unable to function at a productive level of work (Tr. 311). As to unskilled work requirements, Dr. Ellis opined, *inter alia,* that the claimant could not understand, remember, or carry out simple instructions; respond appropriately to supervision or coworkers; or maintain concentration and attention for extended periods due to his poor memory and dyslexia (Tr. 312). He found the claimant was incapable of even "low stress" jobs because of the "history given." (Tr. 315). Dr. Ellis concluded that the limitations he found had been applicable since 2011 (Tr. 318).

On January 1, 2016, state agency psychologist Bruce Lochner, Ph.D. completed a Mental RFC Assessment and found the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions, and to interact appropriately

with the general public (Tr. 66-68). Dr. Lochner concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 68). State agency psychologist Lisa Swisher, Ph.D. affirmed Dr. Lochner's findings on review (Tr. 83-84).

At the administrative hearing, the claimant testified that he was unable to work because he could not "deal with people." (Tr. 38). He further testified that he becomes violent around groups of people, and that he has stayed home since he was last violent six or seven years earlier (Tr. 42). The claimant stated that he does not have a driver's license because he could not comprehend the rule book well enough to pass the test, which he attempted two or three times (Tr. 46). He indicated that he spends most of his day in a recliner with his feet elevated because that is where he is the "calmest." (Tr. 48). The claimant stated that due to constant numbness in his feet and legs, he could walk a "couple of blocks," stand for twenty or thirty minutes, and sit for thirty minutes (Tr. 41, 48). He also indicated that he could lift and carry thirty or forty pounds; had no difficulty using his arms for pushing, pulling, or reaching overhead; and had no difficulty using his hands to button or tie (Tr. 42).

In his written opinion, the ALJ summarized the claimant's testimony and the medical record. In discussing the opinion evidence, he gave little weight to Dr. Ellis's opinion in light of the following: (i) he did not provide recent treatment to the claimant, (ii) the inconsistencies with his own treatment notes, (iii) he based many of the limitations on the claimant's subjective "history," (iv) the claimant presented to him in August 2016

for a disability evaluation to generate evidence rather than to treat symptoms, (v) the normal mental status examinations, (vi) the effectiveness of conservative treatment when the claimant was compliant, (vii) the claimant's sporadic treatment and medication compliance, and (viii) the lack of aggressive treatment (Tr. 25). The ALJ then gave great weight to the state agency psychologists' opinions, finding they were consistent with specified medical evidence of record (Tr. 24).

The claimant first argues that the ALJ erred in assessing Dr. Ellis's opinion. Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is

-8-

rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted].

The ALJ's treatment of Dr. Ellis's opinion, summarized above, meets these standards. Although his speculation that Dr. Ellis based his opinion on the claimant's subjective statements is questionable, the ALJ nevertheless made it clear that he did not arrive at his ultimate conclusion solely on this basis. The ALJ specifically addressed Dr. Ellis's findings, and the Court finds that he adequately discussed and analyzed each of the opinions contained in the record. His findings indicate that he considered each opinion in turn and gave numerous reasons, supported by the record, for adopting or not adopting the limitations described in them. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted]. Accordingly, he did not commit error in failing to include further limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in h[is] RFC assessment.").

Additionally, the claimant argues that the ALJ failed to properly analyze the state agency psychologists' Mental RFC Assessments. Social Security Ruling 96–6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii).

Here, the ALJ gave great weight to the state agency psychologists' opinions, including their opinion that the claimant could not relate to the general public, but limited the claimant to incidental contact with the general public in the RFC (Tr. 20, 24). The claimant essentially argues that the state agency psychologists' finding that he could not relate to the general public means that he was precluded from any contact with the general public, and therefore it was error for the ALJ to include even incidental contact with the general public in the RFC under *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). However, as the Commissioner properly asserts, any error the ALJ may have made in this regard is harmless here because the jobs the ALJ identified do not

require contact with the general public. First, the Dictionary of Occupational Titles ("DOT") worker functions for all three identified jobs indicate that dealing with people is not significant. *See* DICOT § 524.687-018, DICOT § 524.687-022, DICOT § 920.687-042 (indicating that the bakery racker, conveyor line bakery worker, and bottling line attendant jobs involve taking instructions or helping people, but "Not Significant[ly], and that talking is "Not Present"). Similarly, the DOT job descriptions for each of the identified jobs do not describe any contact with the general public. *Id.* Lastly, all three jobs are unskilled, indicating that they involve working with objects or things, not people. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(g) (". . . the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people)"); Soc. Sec. Reg 85-15, 1985 WL 56857, at *4 (1985) (stating that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people"); *Nelson v. Colvin,* 655 Fed. Appx. 626, 629 (10th Cir. 2006) ("Even though [the state agency psychologist] noted marked limitations in [the claimant's] ability to . . . interact appropriately with the public, unskilled work does not require these abilities[.]"). In the absence of any indication in the DOT that the worker in these three positions is required to have contact with the general public, the job is consistent with the state agency psychologists' determination that the claimant could not relate to the general public.

The claimant further contends that the ALJ erred in analyzing his subjective statements because he did not consider the possible reasons for his noncompliance with treatment before discounting his statements on this basis. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8.

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In this case, the Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, the ALJ noted inconsistencies between the claimant's testimony and: (i) the lack of treatment for his impairments, (ii) the routine and conservative treatment, (iii) the normal examination findings, (iv) the gaps in treatment, (v) Dr. Ward's consultative mental status examination, (vi) his reason for leaving his last job was unrelated to his medical conditions, (vii) his failure to follow prescribed treatment, (viii) the lack of imaging and treatment for his back, and (ix) the absence of hospitalization or inpatient treatment for his mental impairments (Tr. 22-24). The evidence in the record reflects the claimant was noncompliant with his neuropathy medication and with his psychotropic medication. However, the claimant has cited to no mental health treatment records that suggest his mental impairments caused his noncompliance, and instead asserts that because other courts have found it to be true, that

finding must apply here. In fact, the claimant himself conveyed to Dr. Ward that he did not want to take antidepressants because he did not "like pills at all" (Tr. 273). The claimant has thus failed to cite to any evidence in the record to contradict the ALJ's findings and the ALJ properly discounted his credibility using this as one of his supporting reasons. *See Adams v. Colvin*, 553 Fed. Appx. 811, 816 (10th Cir. 2014) ("Here, in contrast, Adams fails to city to any evidence that his use of alcohol and marijuana and his intermittent pursuit of mental-health treatment were the result of his mental illnesses. Additionally, unlike the ALJ in *Pate-Fires*, the ALJ in Adams's case [properly] discounted his credibility because his testimony conflicted with medical records."). *See also Archer v. Colvin*, 2016 WL 4926170, at *3 (D. Utah Sept. 15, 2016) ("In the absence of evidence that Plaintiff's mental impairments were the reason for her medication noncompliance, the Court concludes that the ALJ reasonably found Plaintiff's lack of compliance probative of her claimed disability."), *citing Adams*, 553 Fed. Appx. at 815-816. Accordingly, the ALJ's determination here is entitled to deference and the undersigned Magistrate Judge finds no error in analyzing the claimant's subjective statements.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 12th day of September, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**